Abel, et al. *v.* Township of Middletown.

Argued October 4, 1972, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Rodger L. Mutzel,* with him *John W. Nilon, Jr.,* and
*Kassab, Cherry, Curran & Archbold,* for appellant.

*John W. Wellman,* with him *Joseph T. Labrum, Jr.,*
*Francis T. Sbandi,* and *Fronefield, deFuria and Petri-*
*kin,* for appellees.

OPINION BY JUDGE KRAMER, December 4, 1972:

This is an appeal from an order of the Court of Common Pleas of Delaware County, dated February 14, 1972, approving a Land Use Plan for a Planned Residential Development (PRD) submitted by Gwen D. Abel and George G. Abel, III (Abels) to the Supervisors of the Township of Middletown (Township). By virtue of the court's order, the Township's disapproval of the Land Use Plan was reversed, and the matter was remanded to the Township for further proceedings, the court having granted the Abels leave to file their applications for preliminary and final approval of the PRD.

The procedural aspects of this case are confusing, because the Township attempted to expand the powers granted to it under the provisions of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P. L.   , No. 247, art. I, Section 101 et seq., 53 P.S. §10101 et seq., and more specifically the provisions of Article VII of that Act, 53 P.S. §10701 et seq.

On August 10, 1970, pursuant to the enabling provisions of the MPC, the Board of Supervisors of the Township adopted Ordinance No. 136, and on October 12, 1970, adopted Ordinance No. 139 amending Ordinance No. 136. These Ordinances were intended to establish the procedures and requirements for the implementation of a Planned Residential Development Use within the Township. In addition to the usual provisions of a Planned Residential Development Ordinance, the Township included a procedural requirement mandating the prior approval of a Land Use Plan before the presentation of an application for preliminary approval of a PRD. The Ordinances make it quite clear that this required prior approval was a condition precedent to the filing of an application for a preliminary approval of a PRD.

Section 951 of the Ordinances states: "The administration of the procedures concerning the application for and approval of Planned Residential Developments (PRD) shall be vested solely in the Board of Supervisors. . . . (a) Prior to the presentation of an application for a preliminary approval of a Planned Residential Development to the Board of Supervisors, the developer shall present a land use plan of the tract to the Board of Supervisors for their review and approval, which plan shall include the proposed development of the over all tract, including: (1) the types and numbers of dwelling units; and (2) the proposed use of the open space. (b) No preliminary or final plans shall be considered by the Board of Supervisors without prior approval of the land use plan, and review and comment by the Delaware County and Middletown Township Planning Commissions."

On October 12, 1970, the Abels informally discussed with the Board of Supervisors of the Township the possibility of developing their 80-acre tract as a PRD. On November 10, 1970, the Abels again appeared before the Board regarding their proposal. Absent a hearing, the Board, by letter dated December 10, 1970, notified the Abels that, on December 2, 1970, their request for approval of their Land Use Plan submitted under the Township's Ordinance No. 136 was denied. This notice specifically mentioned Section 951(a). On January 8, 1971, the Abels filed a zoning appeal in the Court of Common Pleas of Delaware County from the letter, dated December 10, 1970. The court by opinion, dated April 13, 1971, held that the prior approval required by the above-quoted ordinances ". . . is an unauthorized expansion of the powers conferred upon it by the Municipalities Planning Code, where the power to reject and deny such Land Use Plan is claimed by the Township not to be subject to judicial review." Having thus

exposed the unauthorized expansion of power, the court, nevertheless, determined thereafter that the matter should be remanded to the Board of Supervisors of the Township for the purpose of conducting an evidentiary hearing on the merits of the Abels' Land Use Plan in accordance with Section 708 of the MPC, 53 P.S. §10708.[1] Thereafter the Board of Supervisors held a hearing in June of 1971, in which extensive testimony and evidence was presented by the Abels in support of their Land Use Plan.

Following this hearing, the Abels received an undated decision of the Board of Supervisors which once again denied approval of the Land Use Plan stating that it was not in harmony with what had been planned for the area as reflected in the Comprehensive Plan for Middletown Township. This document, entitled a "decision" was signed by the Solicitor for the Board of Supervisors, and not by any of the members of the Board. This adjudication was again appealed to the court below. In essence, in an opinion, dated February 14, 1972, the court held that the Abels had satisfied all of the requirements set forth in the Ordinances for the approval of its Land Use Plan, and therefore the Township had arbitrarily, capriciously and without just cause denied the approval. The court highlighted the fact that the Township's Ordinances provided for a three-step procedure, the first step of which was the condition precedent approval prior to the two remaining steps involving applications for approval of preliminary and final plans. The court concluded with an order as described at the beginning hereof.

It is the Township's position that the Abels had acted prematurely in that the Township had the power to exercise its zoning discretion *without judicial review* by

---

[1] It should be noted that this section of the MPC specifically regulates hearings required for preliminary approval applications.

requiring the condition precedent approval of the Land Use Plan.

The MPC in Art. VII, 53 P.S. §10701 et seq., provides an elaborate and specific list of provisions under which a municipality may provide for a PRD. The problem arises by virtue of the fact that the Township has gone beyond the legislative grant of power by requiring the condition precedent approval. Section 702 (3), 53 P.S. §10702(3) states: "Such ordinances shall: (3) Set forth the procedures pertaining to the application for, hearing on and tentative and final approval of a planned residential development, *which shall be consistent with* the provisions of this article for such applications and hearings." (Emphasis added.) All of the provisions of Article VII of the MPC provide for an application to be filed, after which the procedural aspects of the Code are brought into play. Section 707 (6), 53 P.S. §10707(6) states: "The application for and tentative and final approval of a development plan for a planned residential development prescribed in this article shall be in lieu of all other procedures or approvals, otherwise required pursuant to Article V and VI of this act." This section, among others, makes it quite clear that the legislative intent was to establish a two-step procedure for the approval of a PRD, namely, applications for (1) a preliminary or tentative plan, and (2) a final plan. If any further proof were needed, it can be found in Section 712 of the MPC (53 P.S. §10712) which states: "Any decision of the governing body under this article granting or denying tentative or final approval of a development plan or [sic] shall be subject to appeal to court in the same manner and within the same time limitations, as is provided for zoning appeals by this act."

In other words, all of the provisions of the MPC point to a legislative intent for a procedure as is specifically outlined in that Act. The Pennsylvania Su-

preme Court in *Philadelphia Presbytery Homes, Inc. v. Abington Board of Commissioners*, 440 Pa. 299, 269 A. 2d 871 (1970) while ruling on the validity of a zoning protest provision noted: "[T]he court below relied upon three basic principles of law. The first was set forth by this Court in Kline v. Harrisburg, 362 Pa. 438, 447, 68 A. 2d 182 (1949) : 'It is settled in Pennsylvania that in the absence of the granting of specific power from the Legislature municipalities do not have the authority to pass zoning ordinances.' The second, a corollary rule, was also noted in Kline, supra, at 451: 'It is to be remembered, however, as was stated in White's Appeal, 287 Pa. 259, 266 (1926) that "While (zoning) regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation." Powers with such serious consequence should be exercised only in the manner designated by the legislature.' (Emphasis added.) The final principle was enunciated in Brazier v. Philadelphia, 215 Pa. 297, 300, 64 Atl. 508 (1906) : 'It is, of course, beyond all question that, if the statute and the ordinance are inconsistent, . . . the latter must give way and the statute only have effect given to it.' Applying these three principles to the case at bar, the court concluded that the authority of the Township . . . [was] derived from the statute, and, because it did, such authority was to be exercised only as the statute prescribed. . . . We believe this conclusion to be sound." 440 Pa. at 306-307, 269 A. 2d at 874-875. Therefore, in view of the fact that the Township in this case in its Ordinances has gone beyond its authority as set forth in Article VII of the MPC, those provisions of its Ordinances which go beyond that authorization are void.[2]

---

[2] This Court recognizes that zoning enabling legislation passed subsequent to the passage of Section 58 of the Statutory Construc-

It is indeed unfortunate that the Abels have been put to the expense and trouble, by the Township and the court below, of extensive preparation and a hearing for a procedure which was unauthorized and which has no legal effect. Such unauthorized procedures by municipalities are not to be condoned. We conclude that the order of the court below, dated February 14, 1972, is defective in principle, but harmless in its directives. It orders only that which the Abels are permitted to do any way under the MPC and the valid provisions of the Township's Ordinances. In affirming the court below, we point out that the Abels may proceed as suggested in the court's order to present their application for approval of their preliminary plan in accordance with all of the valid provisions of all of the Township's Zoning Ordinances, including Ordinances Nos. 136 and 139. So that there is no misunderstanding, we conclude that the requirement of the two Ordinances in question which mandates the approval of a land use plan as a condition precedent to the presentation of an application for approval of a preliminary plan is invalid as an unauthorized expansion of power by the Township. Although not necessary for the determination of the issues in this case, we are constrained to state that the Township's contention that it has discretionary powers to make zoning adjudications which are not subject to judicial review cannot be sustained. Every adjudication by the Board of Supervisors under Ordinances Nos. 136 and 139 which affects one's property rights is subject to judicial review.

Affirmed.

tion Act, Act of May 28, 1937, P. L. 1019, 46 P.S. §558, is to be liberally construed. See *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 49, 228 A. 2d 169, 174 (1967). In the present case, however, there can be no doubt concerning the *lack* of legislative authority for the provisions in question. The legislative intent is clear and the MPC provides the specific procedure to be followed.